**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **CULTURE WIRELESS, INC.  D/B/A MOOLAH WIRELESS, LLC, AND MOOLAH MOBILE, LLC, Plaintiff,** | **Civil Action No. 3:26-cv-01128** |
| **v.** | |
| **MALLIK PANDA AND ITEAM INC. Defendant** | **JURY TRIAL DEMANDED** |

Plaintiffs, Culture Wireless, Inc., (d/b/a Moolah Wireless LLC) and Moolah Mobile, LLC (collectively, "Plaintiff") files this Original Complaint and demand for jury trial seeking relief from breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel from Defendants, Mallik Panda, and iTeam, Inc. (d/b/a BZ Mart) (collectively, "Defendant").

## I.    Nature of the Action

1. This is an action arising from Defendants' failure to perform a signed, binding term sheet and related executed agreement concerning the acquisition/partnership involving Panda/BZ Mart and Moolah Wireless/Moolah Mobile. After handshake agreement (Feb. 13, 2025) and execution of a binding term sheet (Feb. 14, 2025), Defendants delayed, provided only partial proof of funds, raised shifting "board concerns," missed critical meetings, and—through counsel—wrongfully declared breach and terminated on May 1, 2025, despite Plaintiff's full disclosure and ongoing performance. Plaintiff seeks damages for direct financial losses, opportunity costs, and reputational harm caused by Defendant's breach.

## II.    Jurisdiction and Venue

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and Defendants.

3. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and/or Defendants are subject to personal jurisdiction here.

4. Personal jurisdiction is proper because Defendants transacted business in this District, negotiated and executed binding agreements with Plaintiffs directed to this forum, and committed acts causing harm in this forum.

### III.    Parties

5. Plaintiff, Culture Wireless, Inc., ("Culture Wireless" or "Mollah Wireless") is a corporation organized under the laws of the state of Georgia with its principal place of business in Atlanta, GA.

6. Plaintiff, Moolah Mobile LLC, ("Moolah Mobile") is a limited liability company organized under the laws of the state of Georgia with its principal place of business in Atlanta, GA. Collectively, Moolah Wireless and Mollah Mobile are referred to as "Company" or "Plaintiff."

7. Defendant, Malik Panda, is an individual domiciled in Texas, who conducts business in this District.  Malik Panda can be served with process at 1931 Bobcat Trail, Celina, Texas 75009, or anywhere else he may be found.

8. Defendant, iTeam, Inc., is a corporation organized under the laws of Texas, with its principal place of business in **2222 S Service Road #2200, Dallas, Texas 75261**. Upon information and

belief, it is the vehicle through which Panda undertook the transaction at issue.  iTeam can be served with process through its registered agent, at its place of business, or anywhere else it may be found.

9. Does 1–10 are persons or entities whose identities are presently unknown but who are responsible, in whole or in part, for the acts alleged herein.

## IV.    Factual Allegations

10. In early 2023, a third-party intermediary, Charletta Jean-Louis, introduced Plaintiff and Defendant Panda to explore investment and partnership opportunities relating to convenience-store operations and wireless services.

11. On January 29, the parties held an introductory call regarding Moolah Wireless and were placed in a group text for ongoing discussions.

12. On January 30, Panda requested a deeper dive on phone plans, and Plaintiffs provided additional information and followed up via SMS.

13. Between February 1 and 12, the parties exchanged emails, including agreements about signing up for BZ Mart.

14. On February 13, Plaintiffs delivered legal documents for the BZ Mart partnership; representatives (including Vernell and Lamar) met Panda in Dallas, Texas. The parties shook hands, agreed to terms, and executed an agreement.

15. On February 14, the parties signed a binding term sheet for the acquisition.  (attached as Exhibit A)

16. On March 11, the parties agreed that Panda would send bank proof of funds. Panda then delayed, citing travel to Fargo and a doctor's appointment.

17. On March 12–13, Panda failed to confirm or meaningfully respond to Plaintiffs' requests for proof of funds.

18. On March 17, Panda, acting through BZ Mart, agreed to meet again in Dallas; on March 18, he met Plaintiffs and provided only partial proof of funds and a letter from his CFO.

19. On or about March 20, Panda stated that his "board" had concerns with the deal, notwithstanding the binding term sheet and executed agreement.

20. On March 26, Plaintiff proposed a structure to reduce or eliminate the stated board concerns and urged moving forward. Panda, acting through BZ Mart, expressed excitement and asked to learn more.

21. On March 27, a meeting was scheduled for further discussion; no one from Defendants' side joined.

22. On April 25, Plaintiff sent an email offering support to help Panda meet his obligations while Panda continued to say he was "working on bringing in the money."

23. On May 1, Defendant Panda and BZ Mart's attorney (Fred Hull) sent an email purporting to declare Plaintiffs in breach and to terminate the agreement. Plaintiffs responded the same day, rejecting the termination and confirming that all obligations had been disclosed and met. Later that day, Defendants doubled down, denying breach and raising additional ownership concerns.

24. Plaintiff fully performed, stood ready, willing, and able to close, and offered commercially reasonable accommodations to facilitate performance.

25. Defendant materially breached by failing to provide agreed proof of funds, failing to close, missing key meetings, and wrongfully attempting to terminate a binding agreement without contractual cause.

26. As a direct and proximate result of Defendant's breaches, Plaintiff suffered damages, including:

  - Direct financial losses: lost capital injection, increased debt load, loss of collateral control, and operational constraints.

  - Opportunity costs: missed business opportunities, market position loss, and loss of strategic advantage.

  - Reputational harm: diminished industry credibility and adverse effects on employee morale and retention.

  - Additional harms tied to creditor posture: overreaching security interests and related lender liability exposure necessitating defensive measures.

## V.      Count I – Breach of Contract

27. Plaintiffs incorporate paragraphs 1–26.

28. The parties entered binding contracts, including the February 13 executed agreement and February 14 binding term sheet.  (attached as exhibit A)

29. Plaintiff performed or were excused from performing all conditions precedent.

30. Defendant breached by failing to timely provide proof of funds, failing to consummate the transaction, failing to participate in scheduled meetings necessary to close, and purporting to terminate without contractual basis.

31. Plaintiffs suffered damages in an amount to be proven at trial, including those listed in paragraph 26.

## VI.    Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

32. Plaintiffs incorporate paragraphs 1–31.

33. Every contract contains an implied covenant preventing either party from doing anything to injure the right of the other to receive the benefits of the agreement.

34. Defendants acted in bad faith by delaying, providing only partial proof, invoking shifting "board concerns," missing meetings, and issuing a pretextual termination.

35. Plaintiffs suffered damages as a result.

## VII.   Count III – Promissory Estoppel (in the alternative)

36. Plaintiffs incorporate paragraphs 1–35.

37. Defendants made clear promises to fund and close under the binding term sheet and executed agreement; Plaintiffs reasonably and foreseeably relied to their detriment.

38. Injustice can be avoided only by enforcing the promises or awarding reliance damages.

## VIII.  Damages

39. Plaintiffs seek:

- Expectation damages for the benefit of the bargain and lost investment/transaction value of more than $10 million dollars.

- Reliance damages including costs incurred in diligence, meetings, travel, and restructuring to accommodate Defendants' concerns of more than 4 million dollars.

- Consequential damages for opportunity costs, reputational harm, and creditor-related impacts.

- Pre- and post-judgment interest, attorneys' fees and costs where permitted, and any equitable relief necessary to prevent further harm.

## IX.    Prayer for Relief

Plaintiffs respectfully request that the Court:

A. Enter judgment in favor of Plaintiffs and against Defendants on all counts.

B. Award compensatory, expectation, and consequential damages in an amount to be proven at trial (believed to exceed $75,000).

C. Award pre- and post-judgment interest.

D. Award attorneys' fees and costs as permitted by contract or law.

E. Grant specific performance or injunctive relief as warranted by the evidence and the terms of the binding agreements.

F. Grant such other and further relief as the Court deems just and proper.

## X.    Jury Demand

Plaintiffs demand a trial by jury on all issues so triable.


Respectfully submitted,

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

***Attorneys for Culture Wireless, Inc. and Moolah Mobile LLC***